Good morning everyone. We will take the cases up in the order in which they appear on the docket. I first, however, want to take a moment to thank Judge Bob Hinkle from the Northern District of Florida for joining us and helping us out. We're not hearing argument on all the cases that he's helped us out on, but he's been a great help and it's a pleasure to sit with him and have him visit with us. So the first three cases have been submitted on the briefs and record. Andy v. Kijakazi, U.S. v. Lowe, and Waste Action Project v. Buckley Recycle Center. So we will take up Carrier v. I know I'm really mispronouncing his name, Kijakazi. And let's see, Ms. Mossman Fletcher, you may proceed. Thank you, Your Honors. May it please the Court. My name is Taylor Mossman Fletcher and on behalf of Petitioner Tamantha Carrier, I am here to ask this Court to reverse the findings of the Commissioner and remand this case for a full award of benefits. I will reserve two minutes for rebuttal. Of the three issues raised by the plaintiff in this case, the clearest justification for remand is based upon the ALJ's erroneous treatment of medical opinions, and in particular, of the opinion of Dr. Daniel Marsh. More specifically, the opinion with controlling weight as Ms. Carrier's treating provider. This case was filed prior to March 24th of 2017. Accordingly, as a general rule, more weight must be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. If the opinion is not given controlling weight, then the ALJ must look to other factors, including the length of the treating relationship. In this case, Dr. Marsh treated Ms. Carrier for a period of four years, totaling 35 visits in his clinic alone, 16 all before the date last insured expired. The ALJ must also look to the evidence supporting the treating doctor's opinion. In this case, Dr. Marsh clearly relied upon MRI and radiographic studies, which showed significant findings in her lumbar spine. He also relied on in-person examinations, taking history and physicals of the claimant, as well as records from other providers. He also relied on things like diagnostic injections that he performed himself in his office. The ALJ must also rely on the specialty of the treating provider. In this case, Dr. Marsh is, in fact, a physiatrist and a pain management specialist, which is precisely what Ms. Carrier was alleging as a part of her allegations of significant debilitating pain. The ALJ offered no analysis of any of those factors in this case, and determined that Dr. Marsh's opinion was supported because his opinions, quote, were rendered, or was not supported because opinions were rendered outside the period in question. However, this simply is just not accurate. Dr. Marsh's opinions, in fact, related specifically back to 2012, when Ms. Carrier's original motor vehicle accident occurred and at the time she stopped working. He also specifically stated in his opinions that he began treating Ms. Carrier in May of 2016, which is well over a year prior to when her date last insured expired. And so I have a question about, so the ALJ decided to credit Dr. Kwok's opinion over Dr. Marsh, but Dr. Kwok said that she needed 10 percent of her work time off task, and when asked if there were any jobs in the national economy, the V.E. said there would be no jobs in the national economy that would allow 10 percent off task. So are you challenging the V.E., the vocational experts, the hypothetical that was given to the vocational experts? I mean, even assuming the ALJ erred on crediting Kwok, Kwok actually said that there would be no jobs. That's correct, Your Honor. The implication, although it was not raised as a specific issue of the three issues by the petitioner in this case, the inference is that if the original residual functional capacity that the ALJ provides to the vocational expert does not allow for full-time work, then therefore there simply is not work available in the national economy, as the vocational expert testified. The other reasons that the ALJ, and arguably were misguided or misplaced reasons that the ALJ gave for citing or for trying to explain that Dr. Marsh's opinions were not supported were in his in-person examinations. However, a closer look at these in-person examinations and what the ALJ relied upon were things like normal curvature of the spine. However, a physical examination that would reveal a normal curvature of the spine is not going to show anatomical deficiencies that may show up in an MRI. For example, a compressed nerve or severe stenosis, as was the case with Ms. Carrier, as reflected in her September 2016 MRIs. The ALJ also talks about, quote, intact sensation of the bilateral extremities. Again, as citing this for a reason to discount Dr. Marsh's opinion. However, nowhere in this case has Ms. Carrier ever alleged that she can't feel her fingers, feel her toes, or feel her bilateral extremities. Counsel, I respect your argument. And of course, in all these cases, we always hear that the advice and the opinion of the treating physician was not adequately honored. It's bread and butter. We hear it all the time. As I read this record, it looks to me like the ALJ perhaps should have said a lot more and explained a lot more how he ended up giving little weight to Dr. Marsh's opinion. But when you read it all through and you see what happened at Step 5 and so on, what difference would it have made if he had more fulsomely explained why he gave little weight to Dr. Marsh's opinion, albeit even he was the treating physician? Thank you, Your Honor. And that is precisely a point that I want to call to your attention. The citations that the ALJ relied on in this case, he did it four times. He copy and pasted a phrase four times using a stream of citations that starts on page 35 of the excerpts of the record, where he is citing two activities that he is saying that Ms. Carrier told her throughout his decision, which goes to your point, Your Honor. He's saying things like the claimant is telling her doctors that she can take care of her pets, walk on a treadmill, go to parties, when in fact, if you actually look at the records that the ALJ cited to, she for example, the treadmill example, told Dr. Friedman that she was on a treadmill one time at the doctor's recommendation. It caused numbness and pain going down her leg. And in that same exhibit that the ALJ cited to, he specifically ordered her to stop using the treadmill and to switch to things like aquatic or pool therapy. Another citation. It sounded to me like the treadmill was something that the physical therapist put her on as part of the treatment. And she immediately got numb and took her off and said, stop treadmills. She went out walking on treadmills on her own. She was there at the physical therapist, right? Exactly, Your Honor. Yes. And by way of another example, the ALJ cited to the fact that Ms. Carrier told her providers about taking care of pets. In reality, when you actually look to the citation that the judge used, the only reference to the page or on the actual chart note is that she has two cats. That's the only reference to the pets on that page. It doesn't say anything about who's helping her take care of her cats or change the litter or anything in that regard. So if you had to, if you will, encapsulate your argument, is it that the ALJ misstated the record or that the ALJ wasn't sufficiently fulsome in his explanation of why he discounted Dr. Marsh's testimony? I believe it's both, Your Honor. Both? Yes. And I will reserve my remaining time for rebuttal. Thank you. All right. Thank you, Counsel. Mr. McClain. May it please the Court. Jeff McClain on behalf of the Commissioner of Social Security. As the ALJ found in this case, the appellant had significant limitations primarily related to her back and shoulder impairments. The ALJ restricted appellant to a reduced range of sedentary work. That RFC finding was supported by substantial evidence, including the opinions of Dr. Kwok, Dr. Jar, and Dr. Spackman. There are also other opinions in the record that suggested appellant could do even more than the ALJ found. Those included the conclusions of Dr. Hessing, Dr. Moreland, and Dr. Freedman. In the government's view, the ALJ struck a Council, if I understand your brief, you seem to acknowledge that the ALJ didn't expressly consider all of the points raised in Dr. Marsh's opinion. Since he was the primary treating physician, or maybe the only treating physician, doesn't that constitute error under our case law, Your Honor, is that when an opinion is contradicted, as Dr. Marsh's was, then specific and legitimate reasons are required to reject it. Now, the ALJ might consider various factors regarding an opinion, such as the length of the treatment history, those types of things, but it's not necessarily error to fail to discuss them, and there's nothing in the record that suggests the ALJ would. So I can focus you on this. The problem here for the Commissioner, as I see it, this is the treating physician. There are lots of physicians in all these cases, all kinds of people. I'm amazed that there are that many people who practice. But the fact is, this was the treating physician, and the error that's alleged by the complainant here is that she claimed a lot of different things. They say it was backed up by the record, and the ALJ simply didn't confront and address these issues. So my question to you is, regardless of what the other physicians and consultants say, isn't it error for the ALJ to fail to engage the primary points alleged or decided and opined on by the treating physician? My understanding of the case law, Your Honor, is the treating physician rule is certainly relevant to the ALJ's assessment of the medical opinion evidence, and treating physicians are typically afforded the most weight in Social Security cases. However, if the ALJ provides sufficient reasons to reject a contradicted opinion, then that rejection can be upheld by this Court, and that in this case, the ALJ offered sufficient reasons. One of the problems of doing this remotely is you're talking and I'm talking, but what I'm concerned about here is you've got what the treating physician says, you've got the other people, and if the ALJ takes what the treating physician says and says, this is what the treating physician says, and this is what the other person says, and then analyzes it and then makes a decision, that's one thing. What I don't see in this case is that grappling with the differences. You can say all you want that the non-treating physician says X or Y, but if the treating physician says something contrary, doesn't the ALJ have to grapple with that and explain why he decided against the opinion of the treating physician? On transcript 25, I would say that the ALJ did directly address Dr. Marsh's opinions and gave a detailed analysis. The ALJ, in my view, noted the functional limitations Dr. Marsh put forward, discussed that Dr. Marsh said claim its ability to engage in work at less of sedentary exertion level with the capacity to never climb balanced soup meal. The ALJ accounts for these different issues by then discussing that Dr. Marsh's opinion was inconsistent with his treatment notes, that it was contradicted by appellant's activities, and that it was rendered outside the period at issue in this case. Let me ask you this. Let's assume for a moment that we credit the ALJ's discounting of carrier's personal testimony because of the subjective nature of it, plus those who relied upon that for their subjective comments, but failed to grapple with the treating physician's distinct views. What do we do? Send it back? We certainly don't direct an outcome, but don't we send that back for a rehearing on those issues? Yes, Your Honor. If this court determined that the ALJ erred in evaluating Dr. Marsh's opinion, then the proper course would be to remand for further proceedings. That's the ordinary remand rule and I think would be an appropriate decision in this case were the court to determine the ALJ erred with regard to Dr. Marsh. It is, of course, the commissioner's position that Dr. Marsh's opinion was adequately addressed. I would say, unless there are further questions on Dr. Marsh, I'd like to address Dr. Clark's opinion as well. Let me ask you, this goes to what the ALJ said and what you say in your brief, and I think the petitioner's right. The ALJ cited this again and again, and you cite it again or at least more than once in your brief, and I went through every page in the record that you cited, and I think every one pretty much cuts the opposite direction. So, you heard the discussion about the treadmill. We were right, weren't we? There's just an instance that once she was put on a treadmill by a physical therapist, her leg got numb and she was told to stop and not do it anymore. That's true, right? That's correct, Your Honor. All right, and so let's go to the next one. The next page, she had spasms and increased pain. She had once gone out and tried to do some gardening. She had spasms and increased pain as a result. That's the record at 1191. That's true, isn't it? That's correct, Your Honor. And then the next one, her first visit to a physical therapist, she had done a lot of shopping and walking, and her resulting pain was 7 out of 10. That's true, isn't it? That's correct, Your Honor. The next page you cite, 1688, she had severe neck pain and resulting nausea. She was not able to do her household chores. She tried to have dinner for her husband, and the testimony about that is she did very simple things and didn't always get it done. But severe pain resulting in nausea. That's true, isn't it? That was present in the record, correct, Your Honor. Then you say she could go to parties. The ALJ says she can go to parties. She went to one party. She had a problem with her hip. She had to go over to the corner, stand alone, and she was very embarrassed. That's true, isn't it? That's correct, Your Honor. And then there are several more. She sat on the couch for several hours, felt lazy, couldn't sit for very long. That's what the page you cited says. It doesn't say she can do those things without limits. It says that. The next one, she had numbness in her legs and more when she sat or drived for too long. And the ALJ cites that for the proposition that she can sit and drive. What do we do with the fact that the ALJ repeatedly cites these facts that just are not true? In my view, Your Honor, I completely agree. Appellant made qualified statements about her ability to perform these activities. However, there are other pages in the record that suggest that she had a greater limitation in those specific moments that were brought to her doctors. I was going to say, if there are better examples, why are these the ones you cited in your brief? But you go ahead and you tell me the other pages that show that she's limited. In terms of the specific examples, the facts are the facts. Those are the specific examples, Your Honor, and you are correct. On transcript 980, which I did cite in my brief, her doctor noted that her activity level has improved and that she's able to complete her ADLs. There is another similar citation in my brief that I could find, but the point with this court's case law is that even when an individual has made qualified statements regarding their ability to perform their activities, if those statements suggest that the individual is not as limited as they alleged, that could still form a basis as long as the conclusions are reasonable. That's the Molina decision. And here, although the appellant made qualified statements about her ability to perform these activities, the fact of those activities, I still think, provide some basis on the part of the ALJ given the extreme nature of the limitations that she alleged. For example, she stated that she could only lift 5 to 10 pounds at a time without killing her back. She stated that even the wrong pair of pants killed her back. She stated that she could stand for only 10 to 20 minutes before having to change positions and lie down. I also note that in terms of credibility, the ALJ offered other reasons that did support the finding. Those included that her statements were not supported by the objective medical evidence and the reference to her treatment history. I see that I am out of time, Your Honors. I would ask that this court affirm the Commissioner's decision and if remand is determined to be the appropriate course to remand for further proceedings. Thank you very much. Thank you very much, Counsel. Ms. Moslyn Fletcher. Thank you, Judge. Let's take a look at page 980, to which my opposing counsel just cited as a support for his argument. On page 980, which is a chart note from Dr. Marsh's records, dated July 13th of 2016, she tells Dr. Marsh, quote, cooking seems to aggravate her low back a lot. Neck pain is bad, too. Pain at a level of 6 out of 10 and is generally uncomfortable. So when asked to find citations in the record that support the ALJ's decision, I don't believe you'll find them. I believe that even the citations that the ALJ cited to are misplaced and unfounded within the record. Now, in comparing the weight given to Dr. Kwok and Dr. Marsh, I'd like us to take a look at two things. First of all, Dr. Marsh was not only an examining physician, but he was a doctor. And Dr. Kwok rendered his opinion three years after the date last insured in this case, which is precisely one of the reasons that the ALJ purportedly gave for explaining that Dr. Marsh's opinion should not be given controlling weight. So for those reasons, unless the Court has any other questions for me, I'd ask that— I just have one quick question for you. Arguendo, if we conclude that the ALJ erred in connection with his treatment of Dr. Marsh's opinion, and perhaps also with respect to the treating the statements of friends and family on the grounds they didn't have medical training, you've asked us to basically provide a directed verdict. But that's not really appropriate here, is it? Isn't what we would do is just send it back for further proceedings to overcome, deal with the issues that have been raised by you in your appeal? Your Honor, I do recognize that it is a big ask. However, in this case, when we don't have an—or when we have an uncontradicted opinion by Dr. Marsh and the record fully supports a finding of disability, I think it is one that is justified. Okay. Thank you. Carrier v. Kijikazi is submitted and will take up Falls v. Soulbound Studios.
judges: WARDLAW, SMITH, UNKNOWN